| | |
|---|---|
| **JOHN DOE, minor, by and through his** ) <br> **Mother and Next Friend, Jane Doe,** ) <br> **Individually and as natural guardian and** ) <br> **mother of Plaintiff and Jane Doe.** ) <br>         **Plaintiffs,** ) <br> ) <br> ) <br> **v.** ) <br> ) <br> ) <br> **TIMOTHY J. LOWERY, former Chief of** ) <br> **Police, Florissant Police Department and** ) <br> **current Mayor, in his individual capacity;** ) <br> **Missouri Public Entity Risk Management** ) <br> **(MoPerm); JOSEPH MONAHAN,** ) <br> **Detective, City of Florissant, in his individual** ) <br> **capacity; DANIEL BIERMANN, Lt. for** ) <br> **Florissant Police Department, in his individual** ) <br> **capacity; DAVID ROHLFING, Seargent,** ) <br> **City of Florissant, in his individual capacity;** ) <br> **and CITY OF FLORISSANT.** ) <br> ) <br>         **Defendants** ) | Case Number:4:23-cv-1309 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW, Plaintiff in the above styled action and file this Complaint, as follows:

## INTRODUCTION

This is an action for monetary damages pursuant to 42 U.S.C. § 1983 and through the Fourteenth Amendment to the United States Constitution, against: Timothy J. Lowery, former Chief of Police, Florissant Police Department and Current Mayor, in his individual capacity; City of Florissant; Missouri Public Entity Risk Management (MoPerm); Joseph Monahan Detective, City of Florissant, in his individual capacity and the City of Florissant.  This action also asserts state law claims against MOPerm.  The Court can and should exercise supplemental jurisdiction over this claim, pursuant to 28 U.S.C. § 1367, as it is so related to the other claims in the action already under the Court's original jurisdiction and form part of the same case or controversy under Article 3 of the United States Constitution.

1

## **PARTIES**

1. Jane Doe is the guardian and natural mother of John Doe. She brings this cause of action on behalf of her son as Next Friend and on her own behalf.

2. John Doe is a minor who, at all relevant times mentioned herein was a 7-year-old second-grade student at Lusher Elementary School.

3. John Doe was sexually assaulted by Deonte Taylor, an Assistant Teacher employed by the Hazelwood School District at Lusher Elementary School.

4. Jane Doe and John Doe are pseudonyms for the real parties in interest, as the facts alleged herein are highly sensitive and extremely personal in nature.

5. Plaintiff Jane Doe brings this cause of action under Federal and pendent State jurisdiction law.

6. Plaintiffs Jane Doe and John Doe are citizens of the U.S. and were residents of the County of St. Louis County, Missouri at all times relevant.

7. Plaintiff Jane Doe is the Natural Mother and guardian of John Doe.

8. Plaintiff Jane Doe is bringing this action on behalf of her son and for claims she has against the named defendants.

9. Deonte Taylor ("Taylor") was an Assistant Teacher employed by the Hazelwood School District at Lusher Elementary School. Taylor sexually harassed, sexually assaulted, and battered John Doe on approximately 3 occasions during the 2014-2015 School Year. Taylor was arrested finally arrested in connection with his conduct with John Doe in October 2018 and charged with Three Counts of Statutory Sodomy in the 1st Degree.

10. Joseph Monahan, detective for the City of Florissant Police Department, was assigned to investigate the sexual assault of John Doe.

11.     David Rohlfing, Sergeant the City of Florissant Police Department, was assigned to investigate the sexual assault of John Doe.

12.     Daniel Biermann was responsible for supervising detectives investigating the sexual assault of John Doe.

13.     Missouri Public Entity Risk Management (MoPerm**)** ensures access to liability and property coverage for political subdivisions and public entities.  It underwrites liability and property risk, from and against public entities participating in MOPERM including the City of Florissant and its officers and/or detectives.

14.     At all relevant times Defendants were in official uniform and acting under color of law.

15.     Defendant City of Florissant is a municipal corporation organized under the laws of the State of Missouri. The City of Florissant operates the Florissant Police Department**.**

16.     For the purposes of this action and in said capacity, Defendant City of Florissant is responsible for and controls and/or otherwise directs the City of  Florissant Police Department, which in turn promulgates policies and practices in City of  Florissant.

17.     Defendant , City of Florissant, at all times relevant to this cause of action, runs, operates, oversees, administers, supervises, and is otherwise responsible for the conduct of Florissant Police Officers, including both acts and omissions of the officers.

18.     At all times relevant to this cause of action, Defendant, City of Florissant possessed the power and authority to adopt policies and prescribes rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual officers of  Florissant, and to assure that said actions, policies, rules,

regulations, practices, and procedures of Florissant Police Department and its employees comply with the laws and Constitutions of the United States and of the State of Missouri.

## JURISDICTION AND VENUE

19. Venue is proper in the Eastern Division of the United States District Court of Missouri as the events and omissions giving rise to the claims in this action occurred in the County of St. Louis County, Missouri.

## FACTS

20. On or about November 13, 2015, the Mother of John Doe reported the sexual assault of her 7-year-old son to the City of Florissant, Police Department.

21. On November 13, 2015 at approximately 1734 hrs., Ofc. Edwards, DSN 650 responded to the call.

22. The Mother reported the sexual assault of her 7-year-old son by Deonte Taylor, Teacher Assistant.

23. The Mother and Minor John Doe's allegations were met with indifference, disbelief, and contempt.

24. The Mother and Minor John Does were reluctantly transported to St. Louis Children's Hospital for examination

25. A rape kit immediately confirmed The Mother and Minor John Doe's assertions.

26. The rape kit showed the presence of DNA of a male subject, other than the young child.

27. Detective Joseph Monahan was designated the primary officer responsible for the investigation.

28. The DNA taken from the rape kit, DNA taken from the child's body, and the investigation sat dormant for the next 3 years.

29. The Mother repeatedly contacted the police department for an update on the investigation.

30. Each time, she received assurances from officers and detective(s) promising a thorough investigation.

31. Defendant's promises rang hollow as incriminating evidence confirming the child's assertions sat undisturbed, collecting dust.

32. Minor John Doe was transferred to a new school for his safety, as Taylor threatened to kill him and his family if he told anyone about the elicit encounter with Taylor.

33. For three (3) years, Minor John Doe struggled with depression, guilt and shame stemming from assailant's threats.

34. The emotional baggage became so heavy that a teacher at John Doe's new school recognized something was seriously wrong.

35. Upon further inquiry, she learned that Minor John Doe was sexually assaulted, prompting a DFS investigation.

36. The Florissant police department was once again notified of the boy's assertions. At which time, the department finally obtained the results of the three (3) year old rape kit. It confirmed the Mother and the 7-year-old boy's complaint.

37. After more than three (3) years, Taylor was arrested.

38. On November 28, 2018, a warrant was finally issued for the arrest of Deonte Taylor.

39. The delay in completing the police investigation allowed Taylor to obtain information and resources to carry-out hire a hit man to kill the boy and his family for reporting the sexual assault to authorities.

### The Boy Was Traumatized For More Than Three (3)Years While His Assailant Worked Around Young Kids In The School System, And While Accumulating Resources To Hire A Hitman

40. Taylor continued to work in the public school system after minor John Doe's sexual assault.

41. Taylor was allowed to work after minor John Doe's criminal complaint because of the botched investigation by the florescent Police Department.

42. There was ample evidence supporting the boy's allegation of sexual assault.

43. However, Taylor was allowed to work for three years despite the evidence and probable cause for arrest because the officers and/or detectives intentionally and/or recklessly failed to investigate.

44. The officers and/or detectives deliberate, intentional, and/or reckless failure to investigate shocks the conscious.  Their behavior helped conceal a life-threatening secret.

### Minor John Doe Was Exposed To A Sexually Transmitted Disease, Which Was Discovered Once Taylor Was Finally Arrested. After Obtaining A Warrant For His Arrest, And Upon Obtaining A DNA Sample, The Florissant Police Department Learned That Taylor Was HIV-Positive.

45. Minor John Doe was exposed to a sexually transmitted disease.

46. Taylor was HIV-Positive at the time he sexually assaulted Minor John Doe.

47. Information about Taylor's status would have been immediately discovered in 2015 had the officers and/or detectives conducted a reasonable investigation.

6

48. At that time, Taylor was finally arrested.  His DNA sample confirmed he was the likely perpetrator of the sexual assault.

49. On April 21, 2022, Taylor was finally brought to justice.

50. Seven years after the "botched" investigation, Taylor was tried and convicted of first-degree statutory sodomy, and knowingly exposing a 7-year-old to HIV.

51. Taylor plead guilty to two counts of conspiracy to commit murder, after hiring a hit-man to kill Minor John Doe, his mother and grandmother.

52. Defendants conduct allowed Taylor to continue to work and accumulate money to hire a hit man.

53. Defendants conduct allowed Taylor to maintain contacts within the Florissant public School system, which enabled him to acquire the social security number of Minor John Doe's mother thereby allowing Taylor to discover where they were living.

54. As a result, Plaintiffs were forced to leave their home for protective custody.

55. Minor John Doe's mother was forced to leave her job leaving the family financially destitute, as she was the sole bread winner.

56. This occurred because Defendants chose to ignore results of the rape kit.

57. Failing to act for a few days, even a couple of months, may be viewed as an oversite.

58. Failing to act for over 1,000 days or 3 years is a conscious decision.

59. Former Chief Lowery said it best, "we made a huge mistake".. we "…forgot to investigate…," which is analogous to an admission of deliberate indifference.

# COUNT I

### Fourteenth Amendment
### Substantive Due Process Violation
### (42 U.S.C. § 1983):

### (State-Created Danger Doctrine)

### Against

**Timothy J. Lowery; Joseph Monahan; Daniel Biermann; David Rohlfing; and the City of Florissant**

60. Plaintiff's adopt and incorporate herein by reference each and every allegation made in paragraphs 1-59 herein above as if fully set forth herein.

61. Plaintiffs bring this action under 42 United States Code, Section 1983, which allows for claims against Defendants acting under the color of law for the deprivation of rights that are afforded under the constitution, specifically for the deprivation of the substantive due process rights to John Doe, which are provided by the 14th amendment.

62. At all relevant times, Defendants acted under color of state law in their administration of and obligation to monitor and protect students at Lusher Elementary School.

63. At all relevant times, John Doe was a citizen afforded protections of the constitution of the United States of America.

64. John Doe has a constitutional right to protection of life, liberty, and property against invasion by private actors, where, as here, the state created the danger.

65. The constitutional right mentioned herein existed at all relevant times mentioned herein.

66. On or about November 13, 2015, the Mother of John Doe contacted the Florissant Police Department reporting the sexual assault of her 7-year-old son.

67. On November 13, 2015 at approximately 1734 hrs., Ofc. Edwards, DSN 650 responded to the call.

68. The Mother reported the sexual assault of her 7-year-old son by Deonte Taylor, Teacher Assistant.

69. Both Minor John Doe and his mother told the officers and/or detectives that Taylor threatened to kill them if he told anyone about the sexual assault. They both lived in fear each day after filing a police report that Taylor would make good on his promise. Further, it is obvious that there as a risk Taylor transmitted a sexually transmitted disease, including HIV to Minor John Doe given that the boy was sodomized.

70. Yet, Defendants acted recklessly in conscious disregard of the risk for more than three (3) years. There were no plans to act even then, until a caring teacher sensed something was seriously wrong and contacted DFS.

71. It was not until that time that the "new" responding officer learned that a rape kit had been taken from the minor three (3) years earlier. Pressured by DFA; the Minor's new teacher along with continuing pressure by the mother; Florissant Police Department obtained the test results.

72. The test results unequivocally showed that the presence of more than one male DNA on the Minor, which could have been discovered within hours of the test. Timothy J. Lowery was the Chief of police at the time. Chief Lowery admitted, "we made a huge mistake," adding "…we forgot to investigate…."

73. The Florissant Police Department and its officers and detectives simply "forgot" to investigate the sexual assault of a 7-year-old boy, thus leaving to chance this sexual predator and pedophile could rape other kids in the school district and in the community in which he lives.

74. The officers, detectives and the Florissant police department were clearly recklessly indifferent to Minor John Doe and other kids in the school where this sexual predator

9

and pedophile worked. Defendants reckless indifference was on display during the questioning of the mother and the boy.

75. The responding officers was indifferent to the Mothers complaint. The officers did not believe anything that she was saying.

76. The mother was interrogated as if she committed a crime.

77. The seven-year-old boy, who was a special school district, was separated from his mother, further traumatizing him.

78. Defendants tried to convince the mother that the Minor was confusing the sexual assault with an event that happened in the past.

79. Defendant questioned the 7-year-old boy's truth telling ability thereby questioning whether he was the victim of sexual assault.

80. Defendants approached the allegation of assault with contempt and reckless indifference to the truth, which permeated the entire investigation.

81. Defendants reluctantly took the boy to Childrens hospital where a rape kit was taken.

82. The results were available within hours.

83. However, Defendants failed to inquire about the results.

84. The result of the rape kit clearly showed the presence of two (2) different male DNAs present on the boy.

85. The mother constantly reminded Defendants of the need to check the result of the rape kit and to complete the investigation.

86. She consistently called the department asking for an update.

87. She was continuously told the same old line , we promise you, we are conducting a thorough investigation. We are doing everything within our power to get to the bottom of this. We will let you know once we have some new information. This was the refrain each time the Mother called the police department.

88. In realty, no one in the department cared enough to either call or visit Childrens Hospital to see if the rape kit confirmed the 7-year-old story.

89. Apparently, they did not care about the other students that were at risk of sexual assault.

90. They did not care about students in the Minor's class either.

91. Every day Taylor was free and not under arrest, Minor John Doe and his family were at a "significant risk of serious, immediate, and proximate harm and death.

92. Although a rape kit was taken on Minor John Doe, the result of the test sat dormant for three (3) years, which meant there was no way of knowing Taylor was HIV positive.

93. In fact, there was no way the minor John Doe or his family, could discovery Taylor's status, without help from the police, as they could not obtain a warrant without the police intervention.

94. The warrant could have been obtained immediately – the day after the rape kit was obtained had the officers immediately arrested Taylor upon receiving the test results.

95. Defendants conduct taken as a whole, shocks the conscious.

96. Defendants acted willfully and in reckless disregard and indifferent to the need to obtain the results of the rape kit and Taylor's status, given the allegations of sexual assault, thereby failing to protect John Doe and his rights under the 14th amendment of the United States Constitution.

97. As a direct and proximate result of Defendant's conduct, Plaintiff were damaged and have lost assets, income, health insurance, and other benefits; suffered embarrassment and humiliation damage to their personal and professional reputation and sustained emotional distress and are entitled to monetary damages.

98. Defendant's conduct was willful, wanton, and malicious and in complete disregard to Plaintiff's rights.

**WHEREFORE**, Plaintiff prays for an Order declaring the actions of the Defendant to be illegal and in violation of 14th Amendment;

A. Awarding compensatory and/or nominal damages in an amount that is fair just, and reasonable under the circumstances;

B. Awarding the costs of this action;

C. Awarding punitive damages;

D. Awarding attorney's fees; and

E. Any such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT II

### VIOLATION OF THE 14TH AMENDMENT
### RIGHT TO EQUAL PROTECTION OF THE LAW
### BROUGHT PURSUANT TO 42 U.S.C. 1983

#### Against

**Timothy J. Lowery; Joseph Monahan; Daniel Biermann; David Rohlfing; and the City of Florissant**

The Plaintiff incorporates all previously pled paragraphs 1-98

99. Plaintiff's adopt and incorporate herein by reference each and every allegation made in the paragraphs above as if fully set forth herein.

100. Defendants, acting under color of law and acting in concert with one another, deprived plaintiffs constitutional right to receive equal protection under the law.

101. To wit, by selective enforcement, Plaintiff's constitutional protections were denied because of race – African-American.

102. The actions described herein, violated plaintiff's rights in violation of the Equal Protection Act of the 14th Amendment.

103. Defendants acting under color of law, institute, authorize, ratify, permit, and acquiesce in policies, practices, and customs of overly aggressive, pursuit, detention, searches and seizures and excessive force which violate plaintiffs' fundamental right to Immediate non-selective law enforcement; regarding classifications of victims of violent crimes in the State Of Missouri.

104. Defendants exercise discretion to enforce laws based on race. Defendant's decision to selectively exercise enforcement of the law had a discriminatory effect on plaintiffs, inasmuch as no one checked the results of the rape kit for more than three years. In the intervening time, plaintiff's life was in Peril both a hired hitman and exposure to HIV.

105. Plaintiff lost enjoyment of life, lost a place to live, loss, income schools and his formative years out of fear for his life.

106. Similarly situated individuals receive almost immediate results from a rape kit and an ensuing arrest when it is positive.

107. Defendants routinely obtain the results of a rape kit for similarly situated white residents, upon allegations of sexual assault, especially when it involves a child, given other children in plaintiff's classroom and/or school, could be subjected to the same type of harm.

108. The mistrust of the plaintiff and his mother was palpable.

109. Defendants did nothing to facilitate a fair and/or reasonable investigation, but instead were met with callous and reckless indifference to the alleged harm to a seven-year-old, special school district child by a teacher's aide. The mode and conduct of Defendants, failing to immediately arrest a confirmed perpetrator of a violent egregious sexual crime against a victim singles out persons based upon race and or ethnicity there is no governmental interest to show or justify the necessity of the disparity in classifications.

110. Police records provide that well before November 2015, the time of the incident of this cause, Taylor had been confirmed to have contracted HIV Aids, and so has exposed John Doe to said disease.

111. The failure to immediately arrest Taylor allowed him to simply move to another school and further expose other students in another urban area school to not only his sick proclivities but an incurable sexual disease.

112. As a direct and proximate result of the Defendants illegal and unjustified conduct, the Plaintiffs sustained injuries and are entitled to recover damages for:

a. The deprivation of the John Doe's constitutional rights;

b. The humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress and pain suffered by the John Doe;

c. The physical and mental pain and suffering of John Doe;

d. The present value of loss of services and support;

e. All consequential damages; and

f. All actual and compensatory damages including, but not limited to past and present pain and suffering and medical expenses.

**WHEREFORE**, Plaintiff prays for an Order declaring the actions of the Defendant to be illegal and in violation of 14th Amendment;

A. Awarding compensatory and/or nominal damages in an amount that is fair just, and reasonable under the circumstances;

B. Awarding the costs of this action;

C. Awarding punitive damages;

D. Awarding attorney's fees; and

E. Any such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT III

### CLAIMS ARISING UNDER 42 USC §§ 1983 and 1981

### Against

**Timothy J. Lowery; Joseph Monahan; Daniel Biermann; David Rohlfing; and the City of Florissant**

Plaintiffs re-alleges paragraphs 1 through 112 hereinabove

113. Plaintiffs assert the following claims pursuant to 42 USC §§ 1983 and 1981 according to the specific parameters detailed below.

114. Defendant's actions occurred under color of state law for purposes of 42 USC §§ 1983 and 1981.

115. Plaintiffs have the constitutionally protected right to be free of impairment to contract based on race.

116. Plaintiffs is of African-American descent and are thus in a protected class.

117. Plaintiff was treated differently than similarly situated white individuals seeking protection from sexual predators.

118. Plaintiff was thereby denied rights guaranteed by 42 USC section 1981.

119. As a direct and proximate result of the Defendants illegal and unjustified conduct, the Plaintiffs sustained injuries and are entitled to recover damages for:

a. The deprivation of the John Doe's constitutional rights;

b. The humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress and pain suffered by the John Doe;

c. The physical and mental pain and suffering of John Doe;

d. consequential damages; and

e. All actual and compensatory damages including, but not limited to past and present pain and suffering and medical expenses.

**WHEREFORE**, Plaintiff prays for an Order declaring the actions of the Defendant to be illegal and in violation of 42 U.S.C Section 1981;

A. Awarding compensatory and/or nominal damages in an amount that is fair just, and reasonable under the circumstances;

B. Awarding the costs of this action;

C. Awarding punitive damages;

D. Awarding attorney's fees; and

E. Any such other and further relief as the Court deems fair and appropriate under the circumstances.

### COUNT III

### VEXATIOUS REFUSAL TO PAY

PURSUANT TO

Missouri Revised Statute

§§ 375.296 and 375.420

Against

**Missouri Public Entity Risk Management (MoPerm)**

The Plaintiff incorporates all previously pled paragraphs 1-119.

16

120. In August 2020, 22, plaintiff attempted to settle her dispute with the named defendants by sending them a demand letter.

121. Larry Weber from MOPerm responded to the demand letter, stating that a thorough investigation would take place, leading plaintiff to believe that they were interested in settling this dispute.

122. Weber invited plaintiff to provide additional information that may have a bearing on the outcome of the investigation.

123. Plaintiff availed herself of the opportunity to provide additional information, which included the official transcript of the criminal proceeding of Taylor, which unequivocally substantiated her allegations.

124. Additional information was offered to further clarify any ambiguity that may exist surrounding liability.

125. Once again, the additional information offered was without explanation.

126. Thereafter, MoPerm summarily denied liability and refused to further negotiate with plaintiff without explanation and/or reasoning.

127. The former chief of police for the Florissant Police Department admits to liability.

128. Upon information and belief, MOPERM insures against the type of claims set forth hereinabove.

129. Yet, MOPERM refused to pay the claim submitted by plaintiff.

130. The refusal was without reasonable cause or excuse as the facts would appear to a reasonable and prudent person in violation of laws mentioned herein.

131. MOPERM offered no legitimate explanation as to its refusal to pay under the policy.

132. As a direct and proximate result of MOPERM's refusal to pay, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff prays for judgment against Defendant MOPERM and award compensatory and/or nominal damages punitive damages; pre and post judgment interest and reasonable attorney's fee pursuant to § 375.296 and § 375.420 RSMo., along with any other relief deemed just and appropriate.

LAW OFFICES OF CHRISTOPHER BENT, LLC
/s/Christopher Bent, #45875
111 West Port Plaza Drive, Ste. 850
St. Louis, MO 63146
(314) 439-0287
(314) 558-2622 (facsimile)
cbb@cbentlaw.com